**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

RICHARD ROBERT PATEY,

      Plaintiff,

v.                                                  Case No. 3:18-cv-649-J-JRK

ANDREW M. SAUL,[1]
Commissioner of Social Security,

      Defendant.
_____

# OPINION AND ORDER[2]

## I. Status

Richard Robert Patey ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claims for disability income benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of a severe back injury, post-traumatic stress disorder, high blood pressure, diabetes, and acid reflux. See Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed July 19, 2018, at 51, 62, 75, 88, 190. Plaintiff filed applications for DIB and SSI on March 20, 2012,[3] alleging a disability onset

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed July 19, 2018; Reference Order (Doc. No. 13), entered July 20, 2018.

[3] Although actually completed on March 20, 2012, see Tr. at 170, 172, the protective filing date of the applications is listed elsewhere in the administrative transcript as March 16, 2012, see, e.g., Tr. at 51, 62.

date of October 1, 2011. Tr. at 170 (DIB); Tr. at 172 (SSI). The applications were denied initially, Tr. at 51-61, 73, 105, 107-11 (DIB); Tr. at 62-72, 74, 106, 112-17 (SSI), and upon reconsideration, Tr. at 75-87, 101, 104, 122-26, 133 (DIB); Tr. at 88-100, 102, 103, 127-31, 132 (SSI); see also Tr. at 215 (affirming opinion of physician who reviewed medical evidence at the reconsideration level).

On December 16, 2013, an Administrative Law Judge ("ALJ") held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 31-50. Following the hearing, the ALJ issued a decision on January 29, 2014 ("2014 decision"), finding Plaintiff not disabled through the date of the decision. Tr. at 14-25, 1058-69 (duplicate).[4] The Appeals Council then accepted additional evidence in the form of a brief authored by Plaintiff's counsel. Tr. at 5, 6; see Tr. at 234-35 (brief). On June 26, 2015, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's 2014 decision the final decision of the Commissioner.

Plaintiff appealed the 2014 decision to this Court on August 27, 2015. See Tr. at 1103; see Complaint (Doc. No. 1), Case No. 3:15-cv-1062-J-39JBT.[5] On March 28, 2016, the Honorable Joel B. Toomey, United States Magistrate Judge, entered a Memorandum Order ("2016 Memorandum Order") reversing and remanding the Commissioner's 2014 decision for further administrative proceedings based in part on the ALJ's failure to properly discuss and weigh the opinions of Dr. Hector Pagan, one of Plaintiff's treating physicians. Tr. at 1084-91. On March 29, 2016, Judgment was entered reversing and remanding the

---

[4] Plaintiff's date last insured was March 31, 2013, see, e.g., Tr. at 14, so the relevant inquiry was whether Plaintiff had a disability that existed on or before the date last insured.

[5] Other than this case citation, citations to Plaintiff's prior appeal are to documents from the appeal that are included in the administrative transcript.

matter to the Commissioner. Tr. at 1082. Thereafter, the Appeals Council entered an Order on May 9, 2016 remanding the case to the ALJ. Tr. at 1093-95.

On December 5, 2016, the same ALJ held another hearing, during which he heard testimony from Plaintiff, who was again represented by counsel, and a different VE. Tr. at 1038-54. On January 18, 2017, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. Tr. at 1014-31. The Appeals Council received additional information in the form of a brief authored by Plaintiff's counsel. Tr. at 1008, 1009; see Tr. at 1154-59 (brief). The Appeals Council, however, "found no reason . . . to assume jurisdiction," making the ALJ's Decision the final decision of the Commissioner. Tr. at 1004; see Tr. at 1004-07. On May 16, 2018, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes the following argument: "The ALJ's evaluation of the treating physicians' opinions is contrary to [law], resulting in a legally deficient [residual functional capacity ('RFC')] finding and 'credibility' assessment." Plaintiff's Memorandum – Social Security (Doc. No. 16; "Pl.'s Mem."), filed September 19, 2018, at 1, 11 (emphasis and capitalization omitted). Specifically, Plaintiff takes issue with the ALJ's evaluation of Dr. Pagan's and Dr. Ronald Joseph's respective opinions. See Pl.'s Mem. at 12-18. On December 18, 2018, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing Plaintiff's argument regarding the medical opinions.[6] After a thorough review of the entire record and consideration of the

---

[6] As noted below, Defendant does not address Plaintiff's argument regarding the ALJ's evaluation of Plaintiff's subjective symptoms.

parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be reversed and remanded because the ALJ erred in evaluating the treating physicians' opinions and Plaintiff's subjective complaints.

On remand, a proper evaluation of the treating physicians' opinions and Plaintiff's subjective complaints may impact the ALJ's RFC determination. For this reason, the Court need not address that portion of Plaintiff's argument. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## **II. The ALJ's Decision**

When determining whether an individual is disabled,[7] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step

---

[7] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 1016-31.[8] At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since October 1, 2011, the alleged onset date." Tr. at 1016 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: left shoulder rotator cuff tear, degenerative disc disease of the cervical and lumbar spine, obesity, diabetes mellitus with peripheral neuropathy, and depression." Tr. at 1017 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 1017 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

[Plaintiff can] perform light work as defined in 20 [C.F.R. §§ 404.1567(b) and 416.967(b)] with the following limitations: a 30-minute sit/stand option; occasional climbing of ramps and stairs; no climbing of ladders, ropes, and scaffolds; no balancing; only occasional stooping, kneeling, crouching, and crawling; no overhead reaching; and no more than frequent handling and fingering on both sides. [Plaintiff] should not have concentrated exposure to work around vibrations, work around moving mechanical parts, or work at unprotected heights. [Plaintiff] is limited to performing simple tasks with little variation that take a short period of time to learn (that is, up to and including 30 days) and jobs with a specific vocational preparation (SVP) level of 1 or 2. [Plaintiff] is able to deal with changes in a routine work setting. He could relate adequately with supervisors with occasional coworker and no general public contact.

Tr. at 1020 (emphasis omitted).

---

[8] The ALJ erroneously evaluated Plaintiff's disability claims through the date of the Decision instead of through the date last insured, March 31, 2013. See Tr. at 1016-17, 1020, 1029-31. This was not a reversible error, but on remand, the ALJ should nonetheless evaluate Plaintiff's disability claims through the date last insured.

At step four, the ALJ relied on the testimony of the VE and found that Plaintiff is "unable to perform any past relevant work." Tr. at 1029 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("48 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 1030 (emphasis and citation omitted), such as "Warehouse Checker"; "Assembler, Small Products"; and "Inspector," Tr. at 1031. The ALJ concluded that Plaintiff "has not been under a disability . . . from October 1, 2011, through the date of th[e D]ecision." Tr. at 1031 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th

Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff takes issue with the ALJ's analysis of the opinions of Plaintiff's treating physicians, Dr. Pagan and Dr. Joseph, as well as with the ALJ's evaluation of Plaintiff's subjective complaints. The undersigned addresses each issue in turn.[9]

**A. Treating Physicians' Opinions**

**1. Parties' Arguments**

Plaintiff contends that "the ALJ did not demonstrate that the opinions of Drs. Pagan and Joseph are inconsistent with or unsupported by the record." Pl.'s Mem. at 16. Plaintiff argues that "[h]is pain levels have been rated as consistently high despite various medications, nerve blocks and surgery having been employed." Id. at 17-18. Plaintiff asserts the ALJ incorrectly "rel[ied] upon his lay analysis of the raw medical data to reject the only treating physician's opinion[s] regarding Plaintiff's work-related limitations." Id. at 18.

Responding, Defendant contends that in discounting the opinions of Dr. Pagan and Dr. Joseph, "[t]he ALJ noted that objective findings occasionally revealed full extremity strength and normal extremity range of motion." Def.'s Mem. at 8 (citations omitted).

---

[9] As noted, the Court does not address Plaintiff's argument regarding the RFC determination.

Defendant argues that "[t]he ALJ also noted that . . . another treating physician[ ] characterized Plaintiff's complaints as 'moderate.'" Id. (citations omitted).

**2. Applicable Law**

The Regulations[10] establish a "hierarchy" among medical opinions[11] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5) (2006)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f).

---

[10] As noted, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions, 82 Fed. Reg. 5844-01, 5844. Because Plaintiff filed his claims before that date, the undersigned cites the rules and Regulations applicable to Plaintiff's claims, unless otherwise noted.

[11] "Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"); 20 C.F.R. § 404.1513(a).

With regard to a treating physician,[12] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c)(2). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Schink v. Comm'r of Soc. Sec., — F.3d —, No. 17-14992, 2019 WL 4023639, at *7 (11th Cir. Aug. 27, 2019); Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or

---

[12] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

inconsistent with the treating physician's own medical records. Schink, 2019 WL 4023639, at *7; Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

**3. Treatment and Opinions / Analysis**

Dr. Pagan treated Plaintiff mainly for pain in the neck, back, and extremities. Dr. Pagan treated Plaintiff from January 18, 2012 to July 23, 2012. Tr. at 802; see Tr. at 457-59, 462-70, 477-83, 485-488, 591, 658-61 (including duplicates). Dr. Joseph treated Plaintiff primarily for his shoulder pain. Tr. at 809, 851 (duplicate). The administrative transcript reflects Dr. Joseph saw Plaintiff six times from March 6, 2012 to September 7, 2012. See Tr. at 626, 628-29, 631, 793, 794, 807 (duplicate), 809-10, 851-52 (duplicate), 853 (duplicate). Dr. Pagan's and Dr. Joseph's respective opinions are discussed below.

Dr. Pagan completed a disability evaluation of Plaintiff on October 8, 2012. See Tr. at 800-04. In conducting the evaluation, Dr. Pagan reviewed Plaintiff's medical records and diagnostic tests, including a number of MRIs. See Tr. at 800-01, 803. At the time of the evaluation, Dr. Pagan had seen Plaintiff five times. Tr. at 802. Dr. Pagan opined that Plaintiff's "prognosis for further recovery is considered to be poor." Tr. at 802. Dr. Pagan stated that Plaintiff's complaints of bilateral shoulder pain, neck pain, and back pain were "constant in nature and in varying degrees of intensity." Tr. at 802. He found that Plaintiff's gait was "adequate" and that the "[n]eurological exam was for the most part unremarkable," except for decreased sensation in the lower extremities. Tr. at 802.

As to Plaintiff's functional limitations, Dr. Pagan opined as follows. Plaintiff experienced pain that was severe enough to frequently interfere with the attention and concentration needed to perform even simple tasks. Tr. at 802. Plaintiff could sit for up to forty-five minutes and stand for up to thirty minutes. Tr. at 802. In an eight-hour workday, he could sit for less than four hours and stand for less than four hours. Tr. at 803. In an eight-hour workday, Plaintiff would need to take unscheduled breaks every forty-five minutes to an hour, and the breaks would last twenty to thirty minutes at a time. Tr. at 803. In a competitive work situation, Plaintiff could lift ten pounds occasionally and twenty pounds rarely. Tr. at 803. In an eight-hour workday, Plaintiff could reach fifty percent of the time "due to shoulder complaints." Tr. at 803. Plaintiff's impairments were likely to produce "good days" and "bad days." Tr. at 803. Plaintiff would be absent from work more than four days a month as a result of his impairments or treatment. Tr. at 803. In an eight-hour workday, Plaintiff was required to lie down for thirty minutes to an hour. Tr. at 803. Dr.

Pagan concluded that Plaintiff was "unlikely to be able to perform any type of gainful work activity on a sustained and dependable basis." Tr. at 803.

Dr. Pagan stated his opinions were "based on [his] personal knowledge of [Plaintiff], medical records which [were] provided for [his] review as well as [Plaintiff's] response to the various modalities of treatments which ha[d] been employed during his care." Tr. at 803-04.

Dr. Joseph completed a Physical Residual Functional Capacity Questionnaire on October 3, 2012. Tr. at 797-99. The Questionnaire relates to Plaintiff's left shoulder impairment. Tr. at 797. Dr. Joseph opined as follows. Plaintiff was not a malingerer, and his physical impairments were reasonably consistent with the symptoms and functional limitations assessed. Tr. at 797. Plaintiff's pain would frequently be severe enough to interfere with the attention and concentration needed to perform even simple work tasks. Tr. at 797. Plaintiff would need to take unscheduled breaks in an eight-hour workday. Tr. at 798. He could occasionally lift less than ten pounds, could rarely lift ten pounds, and could never lift more than ten pounds. Tr. at 798. Plaintiff had significant limitations in reaching, handling, or fingering. Tr. at 799.

The ALJ gave Dr. Pagan's and Dr. Joseph's opinions "little weight" on the basis that they are "inconsistent with the other substantial evidence in the case record." Tr. at 1027. The ALJ explained as follows:

> [T]reatment notes indicate that [Plaintiff's] pain complaints moderately limit activities. The examination on November 13, 2013 indicates painful range of motion of the spine and shoulders; however, gait was normal. [Plaintiff] had full strength in the lower extremities. Sensation was intact to touch, pin, vibration, proprioception, and two-point discrimination. Following the examination, [Plaintiff] was given only a 35% impairment rating. In June 2013, [Plaintiff] indicated that he was planning to move to Jamaica to open

> a B&B with his estranged wife. At the hearing, [Plaintiff] testified that he discontinued pain medication as the medication was not helping and he was concerned about damage to his liver. In addition, the alleged symptoms have not been persistent as sensation and strength have been normal on several examinations. [Plaintiff] has denied muscle weakness during multiple appointments.

Tr. at 1027-28 (emphasis and citations omitted).

For the reasons set out below, the ALJ erred in assessing Dr. Pagan's and Dr. Joseph's respective opinions.

Preliminarily, the undersigned observes that in the 2016 Memorandum Order, Judge Toomey stated it was "difficult to discern the ALJ's reasoning because he lumped 'multiple treating physicians' together, instead of addressing each one individually as required by Winschel." Tr. at 1088; see Tr. at 21 (2014 decision). Judge Toomey found it "impossible to determine which portion of the ALJ's reasoning may apply to Dr. Pagan and which may not." Tr. at 1088. Here, the ALJ committed the same error as he evaluated and weighed the opinions of five physicians (including Dr. Pagan's and Dr. Joseph's) together, offering the same rationale for discrediting all five physicians. See Tr. at 1027-28.

Overall, in giving little weight to the doctors' opinions, the ALJ cited treatment notes that show Plaintiff is doing well. A review of the record, however, shows that Plaintiff's condition fluctuated, such that some days Plaintiff was doing better than other days. This is consistent with Dr. Pagan's opinion that Plaintiff's impairments cause him to have "good days" and "bad days." Tr. at 803.

Although the November 13, 2013 treatment note reflects Plaintiff had full strength in the lower extremities and intact sensation, it also shows that Plaintiff had "limited range of neck motion," "shoulder weakness," and "morning stiffness." Tr. at 1329; see also Tr. at

1332 (showing decreased flexion, extension, bending, and rotation in the neck and spine); Tr. at 1333 (showing decreased abduction and rotation on both upper extremities, decreased shoulder strength, and shoulder weakness). Although Plaintiff's condition fluctuated so that some treatment notes show normal strength, treatment notes consistently show reduced range of motion. See, e.g., Tr. at 463, 635, 816, 820, 824, 828, 832, 836, 839, 843, 1265, 1276, 1287, 1298, 1309, 1329, 1332-33, 1345.

Back in 2013, Plaintiff indicated he planned to move to Jamaica to open a bed and breakfast with his estranged wife, Tr. at 956, 958, 962, but at the 2016 hearing he testified that he currently lives in Jamaica and that he "spend[s] almost the whole day laying down," Tr. at 1045. Plaintiff explained, "If I walk a block I start getting pain in my ankle. If I try to do any kind of movement or exercise or try any lifting or, I start getting pain[ ] in my arms and my ankles, my back. I have to constantly move around, adjust myself to keep the pain from increasing." Tr. at 1046. He said his wife "brings [his] food up, [he] stay[s] upstairs and she, most of the house is downstairs." Tr. at 1046. There is no indication in the record that Plaintiff ever opened a bed and breakfast in Jamaica. Moreover, at the 2016 hearing, Plaintiff testified his "wife is Jamaican[,] and [he] moved to Jamaica because she owned a house there and [they] couldn't afford to pay the rent here." Tr. at 1045.[13]

Elsewhere in the Decision, the ALJ stated that Dr. Pagan's opinion "is not consistent with the record as a whole." Tr. at 1026. The ALJ then cited only one treatment note from March 28, 2012 indicating that Plaintiff "had substantial improvement" and that "his shoulder [was] better." Tr. at 1026 (quoting Tr. at 628). This treatment note, however, was

---

[13] To the extent the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the other evidence of record, Tr. at 1029, the undersigned finds below that the ALJ erred in evaluating Plaintiff's subjective symptoms.

based on a follow up appointment with Dr. Joseph shortly after Plaintiff's February 23, 2012 shoulder surgery. See Tr. at 628. On July 16, 2012, Dr. Joseph noted that "[r]egarding [Plaintiff's] left shoulder, he continue[d] to have pain and discomfort," but he observed that Plaintiff "ha[d] not had a cortisone injection as ordered." Tr. at 793. On September 7, 2012, however, Dr. Joseph again noted that Plaintiff "continue[d] to have significant shoulder pain and discomfort." Tr. at 809. Importantly, Dr. Pagan observed that Plaintiff "has had recurrent pain ever since" the shoulder surgery. Tr. at 809.

Moreover, the March 28, 2012 treatment note on which the ALJ relied indicates that Plaintiff "continue[d] to have pain and discomfort in his lumbar spine" and that Plaintiff "complain[ed] of persistent low back pain." Tr. at 628. According to Dr. Joseph, Plaintiff "has had epidural steroid injections without any substantial improvement." Tr. at 628. Dr. Joseph stated that Plaintiff "is unable to return to work as a driver in which he does a substantial amount of prolonged sitting." Tr. at 628.

Elsewhere in the Decision, the ALJ discredited Dr. Pagan's opinion that Plaintiff "is unlikely to be able to perform any type of gainful work activity on a sustained and dependable basis," in part because Plaintiff's "treatment has been conservative and in October 2013, [Plaintiff] denied stiffness, swelling, hip pain, ankle pain, knee pain, spasms/spasticity, back pain, muscle weakness and myalgia." Tr. at 1025 (quoting 2014 decision and Tr. at 803). As Judge Toomey observed in the 2016 Memorandum Order, however, "Plaintiff underwent surgery on his left shoulder, . . . further surgery for his shoulder was recommended," and "[s]urgery has also been recommended for Plaintiff's lumbar spine." Tr. at 1089. Moreover, as discussed in the 2016 Memorandum Order, the October 2013 treatment note also states that Plaintiff "presented with back pain" in the

lumbar-sacral spine and cervical spine that was described as "chronic, constant, pinching, sharp, stabbing, stable, throbbing, discomfort[ing], and radiating." Tr. at 1090 (quoting Tr. at 805 (October 2013 treatment note)).

In sum, the ALJ's reasons for giving Dr. Pagan's and Dr. Joseph's opinions little weight are not supported by substantial evidence. "It is not enough merely to point to positive or neutral observations that create, at most, a trivial and indirect tension with the treating physician's opinion by proving no more than that the claimant's impairments are not all-encompassing." Schink, 2019 WL 4023639, at *10. Moreover, although there is no rigid requirement that the ALJ specifically refer to every piece of evidence, the ALJ's failure to meaningfully address the evidence of record constitutes such a broad rejection that judicial review is frustrated. See Dyer, 395 F.3d at 1211. Accordingly, the Decision is due to be reversed and remanded for a reevaluation of Dr. Pagan's and Dr. Joseph's respective opinions. In doing so, the ALJ should evaluate each opinion individually.

**B. Subjective Symptoms**

**1. Parties' Arguments**

Plaintiff contends that in evaluating Plaintiff's subjective symptoms, "the ALJ did not even <u>attempt</u> to demonstrate that Plaintiff's daily activities; location, duration, frequency and intensity of pain; type, dosage and effectiveness of medications or other treatments; treatment other than medication that has been attempted; 'self-treatments' such as lying down or alternating between sitting and standing; and, 'other factors,' are inconsistent with his testimony describing his limitations." Pl.'s Mem. at 16-17. As noted, Defendant does not respond to this argument.

### 2. Applicable Law

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). To reject a claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

The SSA recently issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." Social

Security Ruling ("SSR") 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017).[14] "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

### 3. Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e D]ecision." Tr. at 1029.

Upon review, the undersigned finds that the ALJ erred in making his finding regarding Plaintiff's subjective symptoms because he failed to articulate "explicit and adequate reasons" for it. Wilson, 284 F.3d at 1225. The ALJ discussed some of Plaintiff's testimony and some of the medical evidence, see Tr. at 1020-29—most of which consisted

---

[14] There was a prior version of SSR 16-3P in place at the time of the ALJ's Decision. See SSR 16-3P, 2016 WL 1119029 (Mar. 16, 2016). The same relevant language quoted in this Report and Recommendation appears in this prior version. See id. at *1.

of a five-page quote from a memorandum authored by Plaintiff's counsel—and then recited a boilerplate adverse credibility finding without any explanation, see Tr. at 1029. The ALJ did not articulate what were the inconsistencies between Plaintiff's subjective reports and the other evidence of record, leaving only the boilerplate statement. Indeed, most of the evidence summarized, Tr. at 1020-25, tends to support Plaintiff's statements regarding his subjective symptoms. "In the absence of a cogent discussion of the credibility determination, the statement is too general to permit meaningful judicial review." McKinney v. Astrue, No. 8:08-cv-2318-T-TGW, 2010 WL 149826, at *3 (M.D. Fla. Jan. 15, 2010) (unpublished) (citing Marbury, 957 F.2d at 840 n.2; Walker v. Bowen, 826 F.2d 996, 1004 (11th Cir. 1987); Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985)).

Accordingly, it is unclear what the ALJ relied on to find that Plaintiff's statements were not entirely consistent with the evidence of record. The ALJ's failure to articulate specific reasons in support of his finding frustrates this Court's ability to conduct a meaningful review of the ALJ's decision. Accordingly, the Decision is due to be reversed and remanded for further proceedings on this issue.

## V. Conclusion

For the foregoing reasons, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A) Reevaluate the opinions of Dr. Hector Pagan and Dr. Ronald Joseph individually and articulate the reasons for the weight given to them;

(B) Reevaluate Plaintiff's subjective complaints, and if the complaints are rejected, clearly articulate the reasons for doing so; and

(C) Take such other action as may be necessary to resolve this matter properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** in Jacksonville, Florida on September 12, 2019.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of Record